# David Bovaird et al., Appts., v. Samuel B. Dick et. al.

Equity has jurisdiction to compel an accounting and discovery in aid thereof, and to restrain the manufacture of other than a patented article, in violation of the terms of a written contract.

It is no defense to an action to enforce a contract granting a license to manufacture an article, recited in the contract as a patented article, to allege that the plaintiff had no right to the patent or to grant the license to others.

A contract for the manufacture of a licensed article, providing that, in case of default of monthly statements of sales and payments accordingly, the agreement should be null and void, and that the license granted should be forfeited, at the option of the licensors, cannot.be rescinded by the licensees' refusing the statements. The licensees are liable as long as they manufacture during the continuance of the patent.

(Decided May 31, 1886.)

Appeal and certiorari to review the judgment of the Common Pleas of McKean County in equity. Affirmed.

The facts appear in the opinion of the court below, on exceptions to the report of the master, by OLMSTED, P. J.:

"The plaintiffs and defendants, on October 15, 1878, entered into a contract in which it was recited that the plaintiffs were the owners of certain letters patent for improvements in the construction of drilling jars, or jar fillings, and that the defendant desired to manufacture said jars for sale and use. The contract then provides as follows:

---

NOTE.—Courts of equity have jurisdiction to order accounting, and discovery in aid thereof, though the accounts are all on one side, where the information is necessary to the relief sought. Haught v. Irwin, 166 Pa. 548, 31 Atl. 260; Bank of United States v. Biddle, 2 Pars. Sel. Eq. Cas. 31; Ashton v. Bayard, 9 Phila. 527; Oil Well Packer Co.'s Appeal, 128 Pa. 421, 18 Atl. 348; Johnston v. Price, 172 Pa. 427, 33 Atl. 688. As to right to discovery by bill where the statutes provide for the examination of the party before trial, see editorial note to Cargill v. Kountze Bros. 24 L. R. A. 183.

" 'Now, therefore, the parties of the first part hereby agree to, and do, license the said second parties to manufacture and sell said jars and jar fillings at their place of business in Bradford, McKean county, Pennsylvania, as long as they perform the stipulations and agreements herein specified to be performed by said second parties.

" 'In consideration whereof, the said parties of the second part agree to render to the said first parties, their heirs or assigns, on or before the 5th day of each and every month, a full, true and perfect statement of all jars and jar fillings made during the preceding month, and to whom sold; which statement shall be verified by the affidavit of the parties of the second part or their agent. And the said parties of the second part agree to pay to said first parties, their heirs or assigns, at the time said statement is rendered, the sum of $10 as royalty for each and every jar or jar filling so made during the preceding month.

" 'The said parties of the second part further agree that in case of any default in making the statement and payments herein provided, then the agreement shall be considered null and void, and the license granted to said second parties shall be forfeited, at the option of the parties of the first part.'

"It appears, from the evidence, and from the report of the master, that the defendants entered upon the manufacture of these jars at their place of business at Bradford, Pennsylvania, and continued to manufacture jars up to the 4th day of June, 1885, when the plaintiffs' patent expired by its own limitation.

"The plaintiffs' bill in this case prays for an account under the contract, for discovery in aid of the account, and for an injunction restraining the defendants from manufacturing jars or jar fillings other than those covered by the contract of the 15th of October, A. D. 1878. On the 2d of April, 1881, a preliminary injunction was ordered, restraining the defendants from manufacturing any jars other than those covered by the patent to the plaintiffs in this case. The defendants' answer was then filed; and on the 24th day of November, 1882, the decree of April, 1881, was amended by adding the words: 'And that the defendants account to plaintiffs as provided for in this bill of complaint, and that the master, heretofore appointed in this case, state said account.'

"Subsequently, a motion was made by the solicitor for the defendants to amend the decree for an account, and it was amended by the court by adding the words: 'And to so much of the account as accrued after December 14, 1880, the master is also to take and report the testimony, and his opinion thereon, affecting the liability of the defendants to account after the said date.'

"The proceedings in the case are voluminous, but probably no further reference to them is necessary for a proper understanding of the questions raised by the exceptions to the master's report.

"The exceptions filed by the counsel for plaintiffs are numerous; they are forty-nine in number, but they seem to raise but three questions. The first question raised is: When does the liability of the defendants to account under the contract cease? The contract itself is indefinite as to time; it gives the plaintiffs the power, at their option, to terminate it, and declare the license forfeited at any time when the defendants shall make default in making the statements and payments required of them by the contract. The expiration of the patent on the 4th day of June, 1885, of course terminated the license. It is fair to presume that the parties negotiated with full knowledge of the duration of the patent, and that they had that period in view. The plaintiffs, in case of default on the part of defendants, could terminate it at any time; but the permission was evidently intended for the benefit of the plaintiffs, and it did not enable the defendants at their option to terminate the contract by simply refusing to comply with its terms, and neglecting and refusing to make statements and payments as they agreed to do.

"The defendants were licensed to use the plaintiffs' property; they were not bound to make any specified number of jars nor, indeed, to make any jars at all. If the defendants did not avail themselves of the power which they acquired under the license, if they made no jars such as were covered by the plaintiffs' patent, they could not be called upon to account. If they had made an improvident or unwise contract, they had the power of protection from it in their own hands. But they enter upon the manufacture of these jars under this license, and account under the contract up to such period as they might themselves se-

lect, and, while continuing in the manufacture of the jars, terminate their liability to account under the contract by giving the plaintiffs notice that they will continue to manufacture; but they will not account or pay. They enjoyed the advantages which they contracted for, and they are bound to pay the consideration therefor so long as they manufacture these jars, or until the expiration of the patent.

"That the learned master erred in his legal conclusion upon this question seems to us too clear for argument. Of course the parties who made this contract could have terminated it on the 14th day of December, 1880, by an agreement then made to do so; but the master does not find, as matter of fact, that it was terminated then by agreement of the parties; but he finds its determination as a matter of law because the defendants, on this date, renounced the license.

"We do not discover anything in the position of the plaintiffs that precludes them from asking for an account up to the termination of the patent. At the time of the filing of the bill in this case, the defendants confessedly had neglected or refused to make monthly statements as required by the contract and were continuing to manufacture jars such as were covered by the plaintiffs' license. The plaintiffs could, therefore, properly ask for an account; and the fact that the plaintiffs sought for and obtained an injunction, restraining the defendants from manufacturing jars other than those covered by the patent, cannot operate to prevent an account for the whole period of time during which the defendants were engaged in manufacturing jars that confessedly were of the kind covered by the patent. We conclude, as before stated, that the learned master erred in his finding that the plaintiffs were not entitled to an account for jars manufactured subsequent to the 24th day of December, 1880.

"The plaintiffs' exceptions raise a further question as to the liability of the defendants to account for jars sold by them, and returned because defective, either from imperfect materials used in the construction or defective workmanship. We think a fair construction of the contract is that the defendants were liable to account and pay for the jars manufactured by them and sold;

and that a jar nominally sold, but returned because not a merchantable jar, cannot be considered as a jar sold within the meaning of the contract. We think, therefore, that the master was correct in his finding that jars returned to the defendants because of such defaults as made them unmerchantable should not be included in this accounting.

"The plaintiffs' exceptions raise a further question growing out of the fact of the manufacture of jars by the defendants, alleged by the defendants not to be of a kind covered by the plaintiffs' patent. It will be observed that the defendants, by their contract, agree not to manufacture or sell any jars or jar fillings other than those covered by the plaintiffs' patent during the continuance of the agreement. The plaintiffs' patent seems to have been on a combination of iron and steel in the manufacture of drilling jars, so as to secure the necessary tensile strength in the parts subject to the greatest longitudinal strain, and the hardness of steel to the parts which receive or give the blow, and which are subject to great frictional wear; and this purpose was obtained by welding into the wrought-iron jars a steel headpiece to receive the blow, and by making the inner faces of the link bars of steel where the frictional wear is greatest.

"The master finds that 197 jars manufactured by the defendants, and included in their return were not made under the letters patent. If the plaintiffs sustained injury by the violation of the contract on the part of the defendants in this respect, they have a remedy; but we do not see how, under the pleadings in the case, and from the evidence as reported by the master, we can adjust the damage which the plaintiffs may have sustained, in this accounting. The plaintiffs' bill is for an account for royalties under the contract; and, if we go outside of the contract, we cannot see what there is in the evidence before us by which we can fix the amount of royalty which the plaintiffs should receive for such jars manufactured by the defendants, upon which the plaintiffs had no patent and upon which they were not, therefore, entitled to claim royalty at all.

"We are not unmindful of, nor do we intend to disregard, the general rule that, when once a court of equity acquires jurisdiction and control of a case, it will settle and determine the

whole controversy between the parties; but we do not see how we can make it apply here. We are not clearly able to see how the master found from the evidence that there was so great a number as 197 jars that were not covered by the patent. It may be conceded that, as the patent is for a combination of iron and steel so as to obtain certain results, a jar manufactured entirely of iron or entirely of steel would not be covered by the patent, and could not, therefore, if we are right in our conclusion above stated, be brought into this account; and the defendants, in their statement of account rendered to the master, returned 197 jars as being made of steel; but, on examination of the defendants' evidence, it appears that the jars in this schedule called steel jars were not made entirely of steel, but were partly iron and partly steel.

"Mr. Seyfang says: 'The steel jars mentioned in my statement as steel jars were not all steel, including boxes and pins.' The same witness further testifies: 'We have made very few of all solid steel.'

"It is quite apparent that the bulk of the 197 jars called steel jars were partly of steel and partly of iron; and the question at once presents itself whether these jars, made as they were, are covered by the patent, and therefore the subject of this account. The patentee claims, in his specifications forming part of the letters patent, after describing the manner of the combination of the iron and steel:

"1. The manufacture of drilling jars of combined iron and steel in which, at least, the part in each half of the jars that receives the blow, and the inner faces of the link bars shall be of steel, substantially as and for the purposes described. 2. The hereinbefore-described drilling jars constructed of wrought iron and steel combined substantially in the manner and for the purpose set forth. The draft of the patent, and the description thereof, in the application, shows a hammer face of steel, link bars lined with steel to avoid friction, and the balance of the link bars of iron to obtain tensile strength.

"We incline to adopt the conclusion of the learned master that, if the head piece or hammer face is of steel, and the link bars also of steel, it would not be a use of the combination of iron and steel upon which the plaintiffs' patent is based.

"If the master is right in his conclusion from the evidence that the defendants did not avail themselves of the combination of iron and steel as described in the plaintiffs' patent in the manufacture of the 197 jars, we think he did right in excluding them from the account. It is difficult to determine the number made from the evidence; but we cannot say that the number stated by the master, 197, is too great.

"The plaintiffs' exceptions, so far as they relate to the period of time to be covered by this accounting, are sustained. The balance of them are not sustained, but they are overruled. The defendants' exceptions are overruled."

The court entered judgment against the defendants for a sum named, with costs. The defendants thereupon took this appeal.

The specifications of error raise several questions not touched upon in the above opinion.

The answer of the defendants to the plaintiffs' bill denied, in the first paragraph, that the plaintiffs were the original inventors or assignees of the inventors of the improvements in drilling jars, or that plaintiffs had the right to the exclusive use of the improvement or to license others; and alleged that such invention was publicly used by others prior to the patent. The plaintiffs demurred to the above paragraph, and the court sustained the demurrer and struck out the paragraph. Second assignment of error.

The defendants, appellants, further assigned as error the action of the court in sustaining "plaintiffs' exceptions to the master's report, so far as they relate to the period of time to be covered by the accounting," quoting the exceptions; also in dismissing the defendants' exceptions, quoting them and making each a separate assignment. The exceptions were, in substance, that the plaintiffs had no title to the letters patent, and had no right to bring this action on the agreement set forth in the bill; that the bill should have been dismissed for want of equity at the costs of the plaintiffs; and that the defendants should not have been ordered to pay to the plaintiffs the sum recommended, with costs.

*James C. Boyce, N. B. Smiley, David Sterrett,* and *M. F. Elliott,* for appellants.—Under the pleadings, it must be held that the plaintiffs have no title to the patent mentioned in the bill and agreement. The allegation of that fact in the bill is expressly denied in the answer. Matter of estoppel must be specially pleaded as such. Bowman v. Rostron, 2 Ad. & El. 295; Curtis, Patents, § 199; 1 Chitty, Pl. 509, 603, 227, 611; Freeman v. Cooke, 6 Dowl. & L. 187; Queen v. Haughton, 1 El. & Bl. 501.

The answer is responsive to the bill, and therefore conclusive in favor of the defendants. Eaton's Appeal, 66 Pa. 483; Burke's Appeal, 11 W. N. C. 501.

The bill should be dismissed for want of jurisdiction. The plaintiffs claim that all jars made, whether under the patent or not, were subject to the royalty; hence, they could not need an injunction. The agreement was in restraint of trade, and plaintiffs should be left to their remedies at law. Keeler v. Taylor, 53 Pa. 467, 91 Am. Dec. 221; Gompers v. Rochester, 56 Pa. 194; Harkinson's Appeal, 78 Pa. 196, 21 Am. Rep. 9; Gillis v. Hall, 2 Brewst. (Pa.) 342.

Nor should the bill be sustained for an account. The items are all on one side. It is a mere question of how many jars were made. Grubb's Appeal, 90 Pa. 228; Passyunk Bldg. Asso.'s Appeal, 83 Pa. 441.

A bill for an account must aver an indebtedness to the plaintiff, at the time of filing it. Volmer v. McCauley, 7 Phila. 382; Metz Bros. v. Farnham, 8 Phila. 267.

All the discovery sought or obtained could have been had in an action of assumpsit. Milne's Appeal (Pa.) 2 Cent. Rep. 34, 2 Atl. 534.

The license ended December 14, 1880, when the defendants surrendered their license and made themselves liable thereafter to be sued only in the United States courts. White v. Lee, 5 Bann. & Ard. 572, 3 Fed. 222; Moody v. Taber, 1 Bann. & Ard. 41, Fed. Cas. No. 9,747.

Even in a lease, when an option is given, the option is that of the lessee. Dann v. Spurrier, 3 Bos. & P. 399, 442, 7 Ves. Jr. 231; Price v. Dyer, 17 Ves. Jr. 363; Doe *ex dem.* Webb v.

Dixon, 9 East, 16; Doe *ex dem.* Lockwood v. Clarke, 8 East, 185; Doe *ex dem.* Norfolk v. Hawke, 2 East, 481; Com. *ex rel.* McNeile v. Philadelphia County, 3 Brewst. (Pa.) 539.

This cause should not have been referred to a master before there was an interlocutory decree finding a liability to account. Collyer v. Collyer, 38 Pa. 257.

*Joshua Douglass* and *W. B. Chapman & Son,* for appellees.— The title of the plaintiffs is admitted by the contract between the parties, which estops the defendants. Curtis, Patents, §§ 215–217.

The jurisdiction of equity restraining by injunction the breach of a trade contract is clear. Kerr, Inj. 493; McClurg's Appeal, 58 Pa. 51; Butler v. Burleson, 16 Vt. 176.

The cases cited by the other side are plainly distinguishable. They all show, when examined, that contracts like this are not in restraint of trade.

The act of October 13, 1840 (Brightly's Purdon's Digest, 692), provides: "The several . . . courts of common pleas, within this commonwealth, shall have all the powers and jurisdiction of courts of chancery in settling partnership accounts and such other accounts and claims as, by the common law and usages of this commonwealth, have heretofore been settled by the action of account render; and it shall be in the power of the party desirous to commence such action, to proceed either by bill in chancery or at common law."

In Dick's Appeal, reported in 106 Pa. 589, Mr. Justice TRUNKEY, in delivering the opinion of the court, said: "The learned judge of the common pleas rightly ruled that the bill set out a case suable in account render, and therefore within the general statute of 1840."

Further reference on the same subject is made to the following: Wesley Church v. Moore, 10 Pa. 273–279; Shriver v. Nimick, 41 Pa. 80; Danzcisen's Appeal, 73 Pa. 65; Allison's Appeal, 77 Pa. 221; Wilhelm's Appeal, 79 Pa. 120; Passyunk Bldg. Asso.'s Appeal, 83 Pa. 441; Darlington's Appeal, 86 Pa. 512, 27 Am. Rep. 726; Ressler v. Witner, 1 Pearson (Pa.) 174; Gandolfo v. Hood, 1 Pearson (Pa.) 269; Adam's Eq. 57,

§§ 1–3, 182, 183, and notes, § 77; Bispham, Eq. 526, §§ 481 *et seq.;* Brightly, Eq. 118, 121, 125; 1 Story, Eq. 64, 69, 439; Post v. Kimberly, 9 Johns. 493; Taylor v. Taylor, 43 N. Y. 584.

The prayer in the bill for general relief entitles the complainant to any relief which is consistent with the case made in the bill. Bailey v. Burton, 8 Wend. 344; Wilkin v. Wilkin, 1 Johns. Ch. 117; Story, Eq. Pl. 40, 41, and note; Traip v. Gould, 15 Me. 82; Brown v. M'Donald, 1 Hill, Eq. 302; 1 Dan. Ch. Pr. 383, and cases cited; Beaumont v. Boultbee, 5 Ves. Jr. 485; Palk v. Clinton, 12 Ves. Jr. 63; Read v. Cramer, 2 N. J. Eq. 277, 34 Am. Dec. 204; Bleeker v. Bingham, 3 Paige, 246; Delaware & H. Canal Co. v. Pennsylvania Coal Co. 21 Pa. 131.

The bill in this case being for discovery also, it will be made effectual for the purpose of full relief. Story, Eq. § 64; Gloninger v. Hazard, 42 Pa. 401; Adley v. Whitstable Co. 17 Ves. Jr. 323; Ryle v. Haggie, 1 Jac. & W. 236; Mackensie v. Johnston, 4 Madd. 373; Bank of Kentucky v. Schuylkill Bank, 1 Pars. Sel. Eq. Cas. 219, 235; Hare, Discovery on Ev. 8.

The defendants could not rescind this contract and yet use the patent. The option to rescind was for the plaintiffs alone. Patterson's Appeal, 99 Pa. 521, more fully reported in 11 W. N. C. 572.

Equity having taken cognizance of litigation will dispose of every feature of dispute. Brightly, Eq. § 124; 1 Story, Eq. § 457; Bank of United States v. Biddle, 2 Pars. Sel. Eq. Cas. 52; McGowin v. Remington, 12 Pa. 56, 51 Am. Dec. 584; Shollenberger's Appeal, 21 Pa. 337; Brightly, Digest, 3175.

It is submitted that the defendants cannot annul this contract and lawfully disregard its obligations without the consent and agreement of the plaintiffs. It is a universal rule of law and equity that a contract can be rescinded only by the acts of both parties. New England Iron Co. v. Gilbert Elev. R. Co. 91 N. Y. 155; Patterson v. Silliman, 28 Pa. 304.

No warranty of validity of the letters patent is implied in any license given thereunder, and unattended proof of invalidity is therefore no defense to any suit for promised royalties. Walker, Patents, 221, § 307; Birdsall v. Perego, 5 Blatchf. 251, Fed.

Cas. No. 1,435; Sargent v. Larned, 2 Curt. C. C. 340, Fed. Cas. No. 12,364; Marsh v. Dodge, 4 Hun, 278; Bartlett v. Holbrook, 1 Gray, 118; Marston v. Swett, 66 N. Y. 207, 23 Am. Rep. 43; Kinsman v. Parkhurst, 18 How. 289, 15 L. ed. 385; Kerr, Inj. 425; Curtis, Patents, 246, § 217, 247, § 218; 2 Wharton, Ev. 1149.

PER CURIAM:

We have no doubt of this being a proper case for a court of equity. The appellants were licensed to use the appellees' property. They were not bound to make any specific number of jars. It was optional with them whether to make any under their license. Having, however, commenced to make them and so continuing, they became obliged to pay so long as they manufactured them, until the expiration of the patent. They were, therefore, obliged to render an account.

We see no error in the conclusion of the learned judge as to the number for which they should be charged, and the sum which they should pay.

Decree affirmed and appeal dismissed, at the costs of the appellants.

